7413

MATHESON v. ROGERS.

1. Costs IN EQUITY CASES are within the discretion of the trial Judge. Here the trial Court held to have acted properly in requiring plaintiff to pay the costs, as his failure to perform his contract brought about the litigation.

2. ATTORNEYS' FEES.—A provision in a mortgage providing for a per cent. attorney's fees in case of foreclosure is subject to the control of a court of equity when the creditor resorts to such tribunal to enforce his claim, and the Court will enforce such agreement when it is not clearly unreasonable and oppressive.    In this case, under the facts, such a contract is held to be excessive and oppressive and not enforced.

3. REHEARING refused.

Before GARY, J., Marlboro, December, 1908.    Affirmed.

Action by A. J. Matheson against W. A. & B. D. Rogers. From circuit judgment, plaintiff appeals.

*Messrs. Townsend & Rogers* and *Stevenson, Matheson & Stevenson,* for appellant.    *Messrs. Stevenson, Matheson & Stevenson,* cite: *As to attorney's fees:* 71 S. C., 258; 37 S. C., 212; 68 S. C., 242; 62 S. C., 186; 43 S. C., 72; 31

S. C., 206; 33 S. C., 283; 50 S. C., 309; 69 S. C., 69; 26 Ency., 10.

*Messrs. McColl, McColl & LeGrand* and *Livingston & Muller,* contra.

*Messrs. McColl, McColl & LeGrand* cite: *As to costs:* Code of Proc., 323; 1 McC. Ch., 247; 81 S. C., 315; 1 Am. St. R., 248; 38 N. J. L., 388; 168 N. Y., 560; 3 Kas., 380. *As to attorney's fees:* 95 Wis., 472; 49 Wis., 497; 2 Nev., 207; 173 Pa., 263; 137 Pa., 629; 88 Pa., 384; 16 Fed., 736; 121 Col., 256; 141 U. S., 415; 168 U. S., 325; 50 S. C., 303; 55 S. C., 106.

*Messrs. Livington & Muller* cite: *As to costs:* Code of Proc., 323; 32 S. C., 216; 36 S. C., 569; 41 S. C., 363; 44 S. C., 383; 76 S. C., 181. *As to attorney's fees:* 50 S. C., 303; 71 S. C., 254, 287; 27 Cyc., 1785.

November 12, 1909. The opinion of the Court was delivered by

MR. CHIEF JUSTICE JONES. On December 27, 1904, plaintiff conveyed to defendants certain real estate with covenants of warranty, and to secure balance of purchase money defendants on the same day executed their bond, secured by a mortgage of the premises, for twelve thousand dollars, first instalment of one thousand payable January 1, 1906, and a like sum January of each year thereafter until January 1, 1915, when the last instalment of three thousand dollars was payable, with all interest from January 1, 1905, at the rate of eight per cent. per year, payable annually on every first day of January, unpaid interest to bear interest at the same rate, and in case of default in payment of interest or principal when due the whole debt to become collectible.

The mortgage contained also a stipulation that "in case the debt secured by this mortgage, or any part thereof, is

collected by suit or action, or this mortgage be foreclosed * * * the said mortgagor' * * * shall be chargeable with all costs of collection, including ten per cent. of the principal and interest on the amount involved as attorney's fees, etc."

The first instalment, with all interest, was paid. On September 5, 1906, before the next instalment was due, defendants, having discovered that plaintiff, previous to his deed to defendants, had conveyed away to others a considerable portion of the timber on said premises, as well as a small portion of the land, and having failed to secure adjustment with plaintiff brought action for damages for breach of the covenant of warranty, and on December 9, 1908, recovered judgment against plaintiff for $2,586.51. This sum was immediately paid by plaintiff to defendants, and by defendants back to plaintiff as a credit on the mortgage debt. In the meantime, on October 26, 1907, claiming default had been made in the payment of instalment due on January 1, 1907, plaintiff brought this action to foreclose for the whole mortgage debt and for ten per cent. of principal, and interest additional as attorney's fees. Defendant made answer, denying allegation as to amount due, setting up tender of the mortgage debt and breach of the covenant of warranty. After payment of the judgment of $2,586.51, in the action for breach of warranty, plaintiff by supplemental reply set up this payment in exoneration of the breach. The Circuit Court, upon the testimony taken, overruled defendants' plea of tender, and adopting the judgment of the Court for $2,586.51, as covering the breach of warranty, allowed this sum as a credit as of date of the judgment, and gave judgment of foreclosure against defendants for eleven thousand two hundred and four 7-100 dollars, principal and interest of the debt, for three hundred dollars as attorney's fees, and decreed that plaintiff should pay the costs.

Appellants contend by the terms of the contract recovery should have been allowed for $1,120.40, as attorney's fees, and that there was no evidence before the Court as to what

was a proper attorney's fee, except the papers fixing it at ten per cent. Appellant further contends that by the terms of the contract plaintiff was entitled to recover costs, and, if not, there were no circumstances in the case warranting the action of the Court in imposing costs upon plaintiff.

Except in a clear case of abuse of discretion, or the violation of some rule of law, this Court will not interfere with a decree fixing liability as to costs in an equity cause. *Brown* v. *Brown,* 44 S. C., 383, 22 S. E., 412; *Williams* v. *Jones,* 74 S. C., 281, 54 S. E., 558, *Cauthen* v. *Cauthen,* 81 S. C., 315, 62 S. E., 319; *Anderson* v. *Silcox,* 82 S. C., 117. The taxable costs of an action are the creatures of statute and not of the contract of the parties, and by the express terms of section 323 costs in chancery cases do not follow the event of the suit, except where the Court does not otherwise order. The Court well vindicates its action in declaring that the plaintiff's default in making good titles lies at the root of all contention and litigation in this case; that plaintiff committed a breach of warranty, which he does not dispute; that defendants were deterred from making their payments at the time stipulated only by the knowledge that plaintiff had failed to make to them good title, and that the defendants were not seeking to escape the payment of their just obligation, but that they were making every effort to induce plaintiff to make just allowance and compensation for his failure to perform his contract.

As to attorney's fees the Circuit Court held as follows:

"The question of attorney's fees for the plaintiff in this action should rest on principle, on the same grounds as the other costs in this action, and the equity of the cause should not permit the defendants to be burdened with an onerous charge for the collection of a debt which they were not seeking to evade or avoid, but which they sought to have settled according to the principles of right and fair dealings. The bond and mortgage set up in

this action provided for the payment of ten per cent. of the amount found to be due as attorney's fees in case the debt was collected by suit or action. The purpose of such provision in bonds and mortgages and that which prevents such stipulations from being usurious is the protection of the mortgagee. In the absence of such provision the mortgagee would be compelled to lose a portion of his debt by paying an attorney to collect it by foreclosure. In cases where the default is clearly on the part of the mortgagor, such provisions are just, and appeal to the equitable sense of the Court. But in this case the plaintiff has not been shown to be without fault, and he does not stand in a situation to demand the strict enforcement of a contract which was intended merely for his protection and not for the oppression of the defendants. The precise point does not appear to have been passed upon by the Courts of this State, but there are numerous authorities in other jurisdictions which hold that such contracts are within the discretion of the court of equity. Thus in 27th Cyc., 1785, it is said: "Where a mortgage contains a stipulation fixing the amount or percentage of fee on foreclosure the Court may enforce the contract as it stands, if satisfied that it is not unreasonable or excessive, or used as the cloak for extortion. But the Court is by no means bound to do this. It is entirely within the authority of the Court, notwithstanding the stipulation in the mortgage, to reduce the sum to such an amount as shall be fair and reasonable." The same view of the law is laid down in 13th Am. & Eng. Enc. of Law, page 824.

"I consider that ten per cent of the mortgage debt would be excessive and oppressive as attorney's fees in this case, but I propose to make a reasonable allowance for plaintiff's attorney's fees, and, therefore, fix it at three hundred dollars."

Decisions in this State have generally sustained and enforced stipulations as to attorney's fees in accordance with the terms of the contract.

*Branyan* v. *Kay,* 33 S. C., 284, 11 S. E., 970, sustained stipulation for ten per cent. on $647.33, the amount involved. In *Montague* v. *Stelts,* 37 S. C., 200, a stipulation for ten per cent. on $951.20, the amount due at the time of the suit, was sustained. In *Association* v. *Hoffman,* 50 S. C., 303, a stipulation in a contract not usurious for ten per cent. on amount of bond for $2,250 was upheld. The amount involved in *Association* v. *Rice,* 68 S. C., 237, does not appear in the reported case, but it was comparatively small, and a similar stipulation was upheld, the contract being usurious. In *Bird* v. *Kindall,* 62 S. C., 186, 40 S. E., 142, ten per cent. as attorney's fees on $4,796.87 was sustained. In *Easton* v. *Woodbury,* 71 S. C., 258, 50 S. E., 790, fifteen per cent. on about $920 was sustained as attorney's fees because of the contract, it not appearing that any fraud or deception was practiced. In all these cases the Court enforced the contract according to its terms.

It does not follow, however, that a contract for ten per cent. attorney's fees, regardless of the amount involved, would be sustained.

The true rule deducible from the weight of authority is that such contracts are subject to the control of a court of equity, when the creditor invokes such jurisdiction to enforce his claim, and the Court will enforce the contract where it is not clearly unreasonable and oppressive. See cases cited in note 55 Am. St. Rep., 438, as well as 27 Cyc., 1785, and 13 Am. & Eng. Enc., 824. Under such rule liberal fees have been sustained because of the contract of the parties and because circumstances of oppression were not apparent. But a case may arise in which it would be unconscionable to exact compliance with such a stipulation, and a court of equity ought to interfere. In this case the Circuit Court has found that a fee of $1,120.40 would be "excessive and oppressive," and in view of the circumstances we reach the same conclusion.

30—84

Besides there was no real default by defendants in this case, for if the amount of defendants' recovery upon the breach of warranty had been applied to the extinguishment of plaintiff's claim at the date of plaintiff's claim, or at the date of defendant's demand for adjustment, or at the commencement of defendant's suit upon the warranty, there would have been nothing due and payable to plaintiff at the commencement of this action. As shown by the Circuit Court, plaintiff's own default brought about the situation which gave the opportunity to attempt the foreclosure for the whole debt and the very large attorney's fees.

The exceptions are overruled and the judgment of the Circuit Court is affirmed.

January 8, 1910. PER CURIAM. After careful consideration of the petition herein, and it not being made to appear that the Court has either overlooked or disregarded any question of law or of fact,

It is ordered that the petition be dismissed and the order staying the remittitur be revoked.